# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DONALD HILL, JR., | : | Case No. 3:16-cv-307 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge Walter H. Rice |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| NANCY A. BERRYHILL, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.   Introduction

Plaintiff Donald Hill, Jr., brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. He applied for benefits on June 22, 2010, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) John J. Berry concluded that he was not under a "disability" as defined by the Social Security Act. The Appeals Council granted Plaintiff's request for review, vacated ALJ Berry's decision, and remanded the case to an ALJ. On February 27, 2015, ALJ Elizabeth A. Motta concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Motta's non-disability decision.

## II.    **Background**

Plaintiff asserts that he has been under a "disability" since April 12, 2003. He was forty years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[2]

### A.    **Plaintiff's Testimony**

Plaintiff testified at the hearing before ALJ Motta that he is disabled because, "I don't know if you say stress on the body. I think it basically comes from me, my thinking and I guess my reaction to taking different medications. It makes me react in a weird way where I end up not always being there …." (Doc. #6, *PageID* #114). He goes into a "spaced out mode" and has to stop working to pull himself together. *Id.* at 114-15.

Plaintiff also has seizures. *Id.* at 116. His medication, Tegretol, has helped with his seizures but, "I'm still having the jerks at night and still having like hallucinations or spaced out." *Id.* In addition, he has trouble sleeping. *Id.* at 115. He had medication to

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

help him sleep but when he took it, he did not have the energy to do his job.  *Id*.  Further,

Plaintiff has asthma.  *Id.* at 125.  He believes that his doctor "really doesn't understand

what I'm really going through as far as the breathing and stuff."  *Id.* at 126.  He takes

medication but does not have it consistently.  *Id.* at 125-26.  As a result, "I do a lot of

suffering, just beating on my chest and stuff."  *Id.* at 126.

Plaintiff struggles with lashing out at coworkers and his family members.  *Id.* at

124.  He recognizes that he has an attitude and "it's not been great."  *Id*.  But, "It's like I

can't stop it, I try."  *Id*.

Plaintiff has worked part-time at Neat Cleaners since 2012.  *Id.* at 113.  He is

supposed to work eighteen hours a week but usually works between twenty-three and

twenty-six hours.  *Id.*  He has to work more hours because he is unable to get everything

done in eighteen hours.  *Id.* at 113, 122.

Plaintiff lives in an apartment with his wife.  *Id.* at 111.  He has a driver's license

and a car but does not drive very often.  *Id.* at 111-12.  Plaintiff helps his wife with

chores.  *Id.* at 117.  However, he is not motivated to do things like he used to be.  *Id.*

Although he goes to the store with her, he is "always in a hurry to get out of there."  *Id.*

He very rarely visits other people.  *Id.* at 118.  He used to go to church but does not

anymore.  He explained, "I don't know what it is about me and this paranoia.  I know

everybody's not mean, [] but … it seems like a lot of people I come across, they're not

nice.  And I just lost my motivation to go to like church …. Because I just didn't trust a

lot of people."  *Id.* at 119.  Plaintiff uses a computer to get information, read, and check

Facebook.  *Id.* at 120.  He loves music and can play five or six instruments.  *Id.* at 121.

**B.     Medical Opinions**

  **i.     Giovanni M. Bonds, Ph.D.**

Dr. Bonds evaluated Plaintiff on May 9, 2006. *Id.* at 1766. She noted that Plaintiff's mood seemed depressed and his affect was broad and appropriate to thought content. *Id.* at 1769. Plaintiff acknowledged that he has trouble controlling his temper and stated that "he does not like people who lie and he has a thing about hypocrisy." *Id.* Dr. Bonds observed, "[Plaintiff] is quite focused on what others have done wrong to him but he shows little concern for his inappropriate behaviors and things that he has done wrong. There was no sense of remorse or regret or reflection even about having killed two people or having sexually molested his niece. Yet he was quite full of outrage about how parole authorities had treated him." *Id.* at 1771. At the time of the evaluation, Plaintiff had a class action lawsuit against the parole department for false imprisonment. *Id.* at 1767.

Billy Johnson II, M.A., Psychology Trainee, administered the Wechsler Adult Intelligence Scale – Third Edition (WAIS-III), Wechsler Memory Scale – Third Edition (WMS-III), and Gray Oral Reading Test. *Id.* at 1766. On the WAIS-III, Plaintiff obtained a Verbal IQ score of 84, a Performance IQ score of 84, and a Full Scale IQ score of 83. *Id.* at 1771. All of these scores fall in the low-average range. *Id.* On the WMS-III, he obtained an Immediate Memory Index of 63 (extremely low range), a General (Delayed) Memory Index of 78 (borderline range), and a Working Memory Index of 74 (borderline range). *Id.* at 1772. The Gray Oral Reading Test revealed Plaintiff's reading

comprehension score is at the 4.7 grade equivalent; his rate score is at the 7.2 grade equivalent; and his accuracy score is on the 9.0 grade equivalent. *Id.*

Dr. Bonds diagnosed depressive disorder not otherwise specified and antisocial personality disorder, and she assigned Plaintiff a Global Assessment of Functioning score of 50. *Id.* at 1773. She opined that Plaintiff's ability to relate to peers, supervisors, or the public is moderately impaired because he has problems controlling his temper and dealing with authority figures. *Id.* at 1774. His ability to understand, remember, and follow directions is not significantly limited, and his ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks is not impaired. *Id.* Plaintiff's "ability to withstand the stress and pressure associated with day to day work activities is moderately limited. [He] is easily frustrated, becomes angry easily, and has poor coping skills. He would have difficulty dealing with work demands for speed, accuracy, and productivity, and for getting along with other workers." *Id.*

### ii. Mary Ann Jones, Ph.D.

On August 5, 2010, Dr. Jones evaluated Plaintiff. *Id.* at 1893. Dr. Jones observed that Plaintiff presented as "preoccupied with his symptomology and also evidences significant paranoid ideation and confusion." *Id.* at 1896. Further, "[h]e was mildly to moderately agitated … and wanted to make sure that the examiner understood all of his difficulties." *Id.* at 1895. She noted that he has "significant difficulty with having been labeled a sexual predator. Apparently his niece, with whom he had the inappropriate sexual contact, has reportedly forgiven him." *Id.*

Dr. Jones opined that Plaintiff's ability to relate to coworkers and supervisors is markedly impaired. *Id.* at 1898. Accordingly, "[i]t is unlikely that he would be able to relate sufficiently to coworkers and supervisors on any sustained basis (for two or more hours at a time), even to perform simple, repetitive tasks." *Id.* His ability to understand. remember, and follow instructions is also moderately to markedly impaired, and his ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks is mildly to moderately impaired. *Id.* Plaintiff's "ability to withstand the stress and pressures associated with day-to-day work activity is judged as markedly impaired. He shows marked mental limitations in the areas of relating and comprehension due to the combined effects of his overall psychological condition—his depression, his rages, etc." *Id.* She diagnosed bipolar disorder not otherwise specified "(with depression and, likely, psychotic features)" and assigned a Global Assessment of Functioning score of 50, indicating severe symptoms. *Id.*

### iii.     Joseph Cools, Ph.D.

On April 16, 2012, Dr. Cools testified at the hearing before ALJ Barry. *Id.* at 169. Dr. Cools testified that Plaintiff had been diagnosed with a cerebral abscess that results in a partial onset of seizure disorder. *Id.* at 218. He experiences an odd sensation in his head, disorientation, and difficulty functioning for a few seconds before a seizure. *Id.* at 219. After a seizure, Plaintiff said he has hallucinations, but Dr. Cools indicated that he is experiencing derealization disorder, a condition where reality does not look real. *Id.* During the time between seizures, a person with the type of seizures described by Plaintiff "usually [have] more of a kind of psych presentation." *Id.* at 221. But, Dr.

6

Cools explained, "It's very difficult to say with any degree of definitive assurance [] what is a psych disorder and what is part of the seizure disorder." *Id.* at 221-22. "In his case[,] the case can be made for at least some of his irritability, depression, rages, mood swings, difficulty coping with stress can possibly be attributable at least in part to his seizure disorder. He also had a fairly chaotic childhood … in some ways." *Id.* at 224.

Dr. Cools opined, "Obviously he is not totally unable to participate in his life. He is substantially hampered." *Id.* at 225. He agreed with Dr. Jones that Plaintiff is markedly impaired in his ability to relate effectively to fellow workers and supervisors, but he would add the general public as well. *Id.* at 227. After summarizing the results of the WAIS-III and WMS-III, Dr. Cools concluded, "Materials would have to be presented to him in a variety of modalities and probably read to him…. [and] the period of time for him to learn material would be extended…." *Id.* at 229.

ALJ Berry asked if the fact that Plaintiff is a high school graduate with 150 credits towards a college degree was "indicative of performance that's much greater than what these tests are predicting[?]" *Id*. Dr. Cools responded that he agreed, but noted that the pattern of his scores is not typical of a person that cheated. *Id.* at 230. However, Plaintiff could have had a bad day. *Id*.

Dr. Cools opined that Plaintiff was moderately impaired in restrictions of activities; markedly impaired in social functioning; and mildly to moderately impaired in maintaining concentration, persistence, and pace. *Id.* at 232-33. He had no episodes of decompensation. *Id.* at 233. He is moderately impaired in his ability to carry out detailed instructions and complete a forty-hour workweek. *Id.* at 234. He has a low frustration

tolerance.  *Id.*  He should not be required to switch tasks often and should be given the opportunity to finish one task before he is asked to start another.  *Id.* at 235.

### iv.  Alice Chambly, Psy.D., & Paul Tangeman, Ph.D.

Dr. Chambly reviewed Plaintiff's records on September 6, 2010.  *Id.* at 263-74.  She found that he has three severe impairments:  minor motor seizures, asthma, and affective disorders.  *Id.* at 268.  Further, he has mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  *Id.* at 269.  She concluded, "I have reviewed all the evidence in [the] file and find that although there is new [medical evidence of record,] there are no material changes to either [Plaintiff's] psych impairment or his functioning.  This [mental residual functional capacity (MRFC)] represents adoption of [the] ALJ decision dated 1/29/04 per Drummond/Denard ruling."  *Id.* at 272.

In 2004, ALJ David A. Redmond found that Plaintiff's "'severe' impairments result in petit mal seizures, reduced attention and concentration, decreased stress tolerance, [an] inability to follow complex written instructions, and diminished interpersonal skills.  He is limited to simple tasks that would involve only brief, superficial contact with others."  *Id.* at 261.

On December 29, 2010, Dr. Tangeman reviewed Plaintiff's records.  *Id.* at 276-90.  He affirmed Dr. Chambry's evaluation with only two exceptions:  He found that Plaintiff had no restriction of activities of daily living; and he added to her MRFC explanation,

Plaintiff "is capable of performing SRT that requires no more than brief, superficial contact [with] others." *Id.* at 283, 286.

## III.  Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc.*

*Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    The ALJ's Decision

As noted previously, it fell to ALJ Motta to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1:    Plaintiff has not engaged in substantial gainful employment since April 12, 2003.

Step 2:    He has the severe impairments of asthma, minor motor seizure-like activity possibly secondary to residuals of remote drainage of a brain abscess, and a mood disorder.

Step 3:      He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), at all relevant times through June 10, 2012 consists of "medium work … including lifting up to 50 pounds occasionally and 25 pounds frequently, subject to the following additional limitations: frequent postural activity, such as climbing stairs/ramps, balancing, stooping, kneeling, crawling, and crouching; no climbing of ladders, ropes, or scaffolds; no exposure to hazards, such as dangerous machinery or working at unprotected heights; no exposure to vibration; no concentrated exposure to dust, odors, gases, fumes, chemicals or poorly-ventilated areas; simple, repetitive tasks that are considered low stress, ie, no strict production quotas or fast pace and involving only routine work with few changes in the work setting; no contact with the public as part of job duties; and only occasional contact with coworkers and supervisors.  Beginning June 11, 2012, [Plaintiff] has been restricted to the basic exertional requirements of light work activity with postural activity limited to occasional, but all other restrictions set forth above remain the same."

Step 4:      There was no determination on the issue of past relevant work.

Step 5:      He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 78-96).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 96.

## V.   <u>Discussion</u>

Plaintiff contends that the ALJ erred in her evaluation of the medical opinions of record.  The Commissioner maintains that substantial evidence supports the ALJ's assessment of all of the medical opinions.

## A.     Medical Opinions

Social Security Regulations recognize several different categories of medical sources:  treating physicians, nontreating yet examining physicians, and nontreating yet record-reviewing physicians.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).  The record in this case contains the opinions of two examining psychologists, Dr. Bonds and Dr. Jones, one testifying medical expert, Dr. Cools, and four record-reviewing doctors, Drs. Chambly, McCloud, Tangeman, and Villanueva.

Under the Regulations, "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant…."  20 C.F.R. § 404.1527(e)(2)(ii); *see* Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).  When considering the opinions of nontreating sources, ALJs use the same factors used when weighing treating source opinions—the examining relationship, supportability, consistency, specialization, and other factors such as the source's understanding of disability programs.  20 C.F.R. § 404.1527(a)-(d).

> [T]he opinions of State agency medical and psychological consultants … can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence …, the consistency of the opinion with the record as a whole, …, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.   The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Soc. Sec. R. 96-6p, 1996 WL 374180, at *2.

*State Agency Psychological Consultants*

ALJ Motta gave the opinions of Dr. Chambly and Dr. Tangeman, the State agency record-reviewing psychological consultants, "great weight" and provided two reasons. (Doc. #6, *PageID* #93). First, she found that "the record and longitudinal history of record are more consistent with their conclusions than those of the one-time consultative examiners or the prior medical expert." *Id.* Second, ALJ Motta observed that their "opinions rely on all of the record and their conclusions are consistent with that evidence, including the more recent treatment records of Dr. Alwis and Dr. Gollamudi at DayMont." *Id.*

ALJ Motta provided no examples or explanation of how their opinions are "more consistent" with the record. To the contrary, she fails to recognize several inconsistencies.

In 2004, ALJ Redmond found that Plaintiff "is limited to simple tasks that would involve only brief, superficial contact with others." *Id.* at 259. Both consultants adopted his decision, concluding—almost seven years later—that there have been "*no material changes* to either [Plaintiff's] psych impairment or his functioning" since ALJ Redmond's decision. *Id.* at 272. Notably, Dr. Tangeman restricted Plaintiff to "repetitive" tasks, a limitation that was not included in ALJ Redmond's mental limitations. *Id.* at 286.

Additionally, ALJ Redmond concluded Plaintiff had no restriction of activities of daily living and mild to moderate difficulties maintaining social functioning. *Id.* at 258.

13

Dr. Chambly, however, found a mild restriction of activities and moderate difficulties in maintaining social functioning. *Id.* at 269. Less than four months later, Dr. Tangeman found no restriction of activities and agreed with Dr. Chambly that he had moderate difficulties in maintaining social functioning. *Id.* at 269, 283. This shows inconsistency between ALJ Redmond and the consultants as well as between the consultants— inconsistency that ALJ Motta failed to recognize.

Further, despite giving Dr. Chambly and Dr. Tangeman "great weight," ALJ Motta—without any explanation—added limitations to and removed restrictions from their opinions of Plaintiff's mental residual functional capacity. Specifically, in addition to the consultants' limitations, ALJ Motta restricts Plaintiff to "tasks that are considered low stress, ie, no strict production quotas or fast pace and involving only routine work with few changes in the work setting[.]" *Id.* at 89. She further limits him to "no contact with the public as part of job duties[.]" *Id.* However, rather than "brief, superficial contact," she allows "occasional contact with coworkers and supervisors." *Id.*

Additionally, ALJ Motta's statement that the consultants relied on "all of the record" is incorrect. Both consultants reviewed the record in 2010—over four years before ALJ Motta's decision, and in that time, the record grew substantially. Specifically, they did not have the benefit of Dr. Cools' testimony; treatment records from Day-Mont Behavioral Healthcare, Dr. Jones, Community Health Centers of Greater Dayton, Wallace-Kettering Neuroscience Institute, or the Clinical Neuroscience Institute; or records from Kettering Medical Center, Miami Valley Hospital, and Grandview Hospital.

To the ALJ's credit, she does acknowledge that there are more recent treatment records from Day-Mont. However, she concludes that the consultants' opinions are consistent with those new records and, again, she does not provide any explanation. This finding is not supported by substantial evidence. As explained in more detail below, treatment notes from Day-Mont illustrate Plaintiff's relentless struggle with his mental health conditions.

### Dr. Bonds

ALJ Motta assigned Dr. Bonds' opinion "significant weight." *Id.* at 93. She explained, "Her conclusions are consistent with the subsequent evidence confirming that [Plaintiff] retains the ability to sustain the demands of the reduced range of unskilled work set forth above." *Id.* She does not provide any further explanation or citation to evidence. This conclusory finding does not satisfy the an ALJ's requirement under the Regulations to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant…." 20 C.F.R. § 404.1527(e)(2)(ii); *see* Soc. Sec. R. 96-6p, 1996 WL 374180, at *2.

### Dr. Jones

Plaintiff contends that because Dr. Jones saw Plaintiff twice after the consultative exam, she "can arguably be classified as a treating or examining source." (Doc. #7, *PageID* #2686). However, "the relevant inquiry … is whether [the doctor] had the ongoing relationship with [the plaintiff] to qualify as a treating physician *at the time he rendered his opinion.*" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (emphasis in original). At the time Dr. Jones provided her opinion, she had only

15

examined Plaintiff once. Thus, she is an examining source. *See id.* at n.10 ("[V]isits to [the physician] *after* his RFC assessment could not retroactively render him a treating physician at the time of the assessment.").

ALJ Motta assigned Dr. Jones' opinion "limited weight because it is inconsistent with the information routinely set forth in the treatment notes." (Doc. #6, *PageID* #93). However, she gave Dr. Jones' opinion "some weight to the extent that [Plaintiff] has a mental impairment that imposes some functional restrictions." *Id.* She found that Dr. Jones' "conclusions that [Plaintiff] experiences marked limitations or symptoms in any area is undermined by [Plaintiff's] lack of credibility and the treatment notes from DayMont, which confirm that [Plaintiff] exhibits significantly greater functional capacity than reported by Dr. Jones." *Id.* More specifically, she noted, "it appears that Dr. Jones … relied very heavily on [Plaintiff's] reported criminal history and history of aggression in concluding the degree of social limitation [Plaintiff] experienced. In contrast, [Plaintiff] was always noted to be cooperative, he reported getting along with the people at work, and he has maintained a stable relationship with his wife since they got back together." *Id.* And, Dr. Jones' "conclusions concerning [Plaintiff's] ability to understand, remember, and follow instructions, as well as maintain attention, concentration, persistence, or pace are inconsistent with her observations that [she] performed those tasks adequately during her evaluation with no concentration or memory problems noted." *Id.*

The ALJ's conclusions, however, are not supported by substantial evidence in the record. Plaintiff's treatment records reveal the perpetual problems caused, at least in part,

by his persistent mental health conditions. For example, in September 2013, Dr. Alwis notes, "He keeps worrying about life/situational stresses. Relating the difficulties at work and rambling about the extreme stress and how he copes/tolerates mostly by praying[.] States his mind is wandering and constantly racing. [Patient] worrying about people in general. Upset about injustices/unfairness about events. [T]alking nonstop. Racing thoughts." *Id.* at 2595. Then, for the next few months, he seems to improve: "Getting along with people at work and with wife"; "Not worrying much"; "Does not seem to be paranoid or delusional"; "he has done well with dealing with the employees." *Id.* at 2578-80. Unfortunately, his mental health declined again in February 2014. Dr. Alwis noted, "he is having an [attitude] at work, getting more depressed and not [feeling] good. Also seems to be getting agitated at other people[']s behavior." *Id.* at 2567. In April 2014, Dr. Alwis noted Plaintiff's demeanor was preoccupied and his behavior was restless. *Id.* at 2551. Further, he was still grieving over his mother's death. *Id.* at 2552.

The fact that Plaintiff's symptoms improve enough at times for him to cooperate with physicians, get along with others, and complete tasks during an evaluation does not lead to a reasonable conclusion that he can return to work given the fluctuating nature of his mental health problems. *Cf. Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("The administrative law judge's casual equating of household work to work in the labor market cannot stand.").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong

while contrary evidence is lacking.  However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.  The Commissioner's non-disability finding be vacated;

2.  No finding be made as to whether Plaintiff Donald Hill, Jr., was under a "disability" within the meaning of the Social Security Act;

3.  This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4.  The case be terminated on the Court's docket.


Date:  August 11, 2017                              *s/Sharon L. Ovington*
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).